**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FREDERICK AGBETUYI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| BROOKDALE SENIOR LIVING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, FREDERICK AGBETUYI, and complains against the Defendant, BROOKDALE SENIOR LIVING, INC., as follows:

1.   This is a proceeding for declaratory and injunctive relief and damages to redress the deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §2000e et seq. ("Title VII").

## JURISDICTION AND VENUE

2.   Jurisdiction of this court is invoked pursuant to Title VII, 42 U.S.C. §2000e-5, as well as 28 U.S.C. §§1337 and 1343.

3.   Defendant further constitutes an "employer" within the meaning of Title VII, 42 U.S.C. §2000-(b), based on its engagement in an industry affecting commerce and its employment of fifteen (15) or more employees for each workup day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

4.   Prior to filing this civil action, the named Plaintiff timely filed written charges under oath asserting employment discrimination with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff received a Notice of Right to Sue for each of the

Charges of Discrimination. A copy of said Notice of Right to Sue marked Exhibit "A" is attached hereto and made a part of this Complaint hereof.

5.   Plaintiff timely filed this action in federal court.

6.   The unlawful employment practices stated herein were, in part, committed within the Northern District of Illinois. But the defendant's corporate office is located in the City of Chicago, Illinois within the Northern District of Illinois. Accordingly, venue thus lies within this judicial district under 28 U.S.C. §1391(b). Venue further lies within this judicial district under 28 U.S.C. §1391[c], since ABM Parking Services, Inc. does business in this judicial district.

## THE PARTIES

7.   Plaintiff, FREDERICK AGBETUYI, is a resident of the Village of Oak Forest, Cook County, Illinois.

8.   Defendant BROOKDALE SENIOR LIVING, INC. (hereinafter, "ABM") is a corporation incorporated in the State of Tennessee, with its principal place of business in the City of Brentwood, State of Tennessee, doing business within the Northern District of Illinois in the City of Chicago, State of Illinois, and was plaintiff's employer during the relevant period giving rise to this cause of action.

## ALLEGATIONS

9.   The named Plaintiff, FREDERICK AGBETUYI, is asserting claims for discrimination on the basis of national origin and gender under Title VII, retaliation, and intentional infliction of emotional distress.

10.  Plaintiff is Nigerian and a minority, and, therefore, belongs to a protected group. He

has always performed his job satisfactorily and performed his job satisfactorily during his employment with BROOKDALE.

11.   BROOKDALE has engaged in a pattern and practice of discrimination and retaliation. Furthermore, BROOKDALE has engaged in a practice of intimidation and retaliation which, on information and belief, has had the effect of making additional people more reluctant to come forward with complaints.

12.   The working conditions of this Plaintiff at BROOKDALE are permeated with discriminatory intimidation, ridicule and insult which have changed the conditions of Plaintiff's employment and created an abusive and hostile work environment for the Plaintiff.

13.   Plaintiff was discriminated against because of his national origin, Nigeria, and retaliated against for opposing discrimination in the workplace.

14.   Plaintiff has been employed as a Licensed Practical Nurse with BROOKDALE from August 2013 to March 2, 2017.

15.   Plaintiff has at all times performed his job duties as a Licensed Practical Nurse in a satisfactory manner.

16.   All of Plaintiff's annual evaluations with the Defendant from August 2013 to March 3, 2017 have been satisfactory.

17.   Plaintiff was discriminated against because of his race, black, and national origin, Nigerian, in violation of Title VII of the Civil Rights Act of 1964, as amended. He was retaliated against when he was suspended for three days for filing an honest and truthful report about an incident involving the neglect of a fallen resident by D'Johnell

Williams. He was wrongfully suspended when the Defendant stated it suspended him on the complaint on two employees that he verbally abused a patient on March 21, 2016. The alleged verbal abuse of a patient never happened. He was also retaliated against when he was accused of the error that Sandra made by being taken off the schedule on April 23, 24,, and 25, 2016, terminated for medication error, and, also, for filing a Charge of Discrimination with the Illinois Department of Human Rights on April 22, 2016.

18.   Plaintiff was denied the same terms and conditions afforded to his co-workers who were similarly situated as myself including D'Johnell Williams, Sandra, and Lindsay, Licensed Practical Nurses [US Citizens] and females.

19.   He was the only male Licensed Practical Nurse in the building.

20.   On March 23, 2016, he reported an incident in which a resident fell and D'Johnell Williams refused to attend to her.

21.   Instead, D'Johnell Williams left because she stated that she had to go and pick up her baby and that the report should be made to the Plaintiff. She also stated that the Plaintiff might be just sitting in his car.

22.   Despite his formal complaint to management, Johnell Williams was never reprimanded or suspended.

23.   On March 24, 2016, Antoinette Armour and Mary Jane Hora, Brookdale employees filed a complaint against the Plaintiff on the instigation of D'Johnell Williams that he verbally abused a resident when in fact he did not.

24.   On March 21, 2016, and contrary to their false complaint, the Plaintiff stated to the

resident as follows: " you need to be using your wheel chair because if you fall and injure yourself, I will have to send you out."

25. On March 24, 2016, Tina Mitchell, the Executive Director, stated to the Plaintiff that two employees stated to her that he verbally abused a patient on March 21, 2016.

26. This complaint as stated by these two employees never happened.

27. Pursuant to the company's policy, such an abuse, if this incident did occur, it should have been reported immediately.

28. In this case, Mary Jane and Antoinette waited four (4) days and until after the Plaintiff had reported D'Johnell Williams before deciding to report to Ms. Mitchell to make this false charge against him

29. In another incident, Nurse Sandra, LPN, made a mistake when she put a patch on a patient's arm and put the wrong date.

30. She put in a wrong date of April 15, 2016 instead of April 14, 2016.

31. The patch was supposed to be changed 72 hours later, and, that is, April 18, 2016 based on the date of April 15, 2016.

32. On April 21, 2017, Brittney Lyons called the Plaintiff to her office and accused him of medication error regarding the above Fentanyl Patch.

33. Plaintiff responded to her by asking whether she had spoken with Sandra and carried out any investigation.

34. She replied that it did not matter and that the Plaintiff should have caught the mistake, and that this could have gotten him fired.

35. There was no investigation done on this issue at all.

36.   Plaintiff discovered that Brittney took him off the schedule for Saturday, April 23, 2016; Sunday, April 24, 2016 and Monday, April 25, 2016.

37.   She publicized the schedules as open shifts via text on the company's cellphone to all nurses who might interested.

38.   Plaintiff called off on April 22, 2016 to due to his illness.

39.   On April 21, 2016, based on Plaintiff's physician's order, Plaintiff called off to the appropriate number and got a confirmation from Brittney Lyons. Plaintiff was out for two weeks on physician's order.

40.   On April 22, 2017, Tina Mitchell called and texted the Plaintiff about the coverage of his shifts.

41.   It was a known fact that the shifts in question had been put out as open shifts for other nurses who might be interested.

42.   Plaintiff responded to Ms. Mitchell that the coverage of his shifts should be addressed to Brittney and that her calling and texting him amounted to harassment, emotional torturing and very depressing to his well being.

43.   Plaintiff advised her that the shifts in question had been put out as open shifts to other nurses; that he followed protocol as laid out in the Handbook in calling off, and that his physician's certification would be sent to her in due time.

44.   Plaintiff advised her that at that time he was going through episodes of depression, anxiety, and constant headaches due to the hostile work environment she created for him at Brookdale.

45.   Finally, Plaintiff pleaded with her that she and her other associates from Brookdale

should stop calling and texting him unless it was an emergency.

46. On April 28, 2016 Plaintiff had a meeting with Bobbi, the Area Manager, and Alisa, the Human Resources Manager from the corporate office regarding how Brittney was harassing and threatening him and other employees of Brookdale. They both promised to look into it because that was the complaints they had been getting all over the building. Furthermore, they also came to a conclusion that there was no proper investigation carried out in the case of the Fentanyl Patch.

47. On March 1, 2017 at 4:30 p.m. Plaintiff was in a resident's room to give his medication to him, and the resident insisted that he would not take his medication until he talked to his son. Bryan, a care giver, who was assigned to this resident witnessed the whole situation.

48. Plaintiff went to the Legacy Unit to search for a portable phone to call the son so that the resident could talk to the son.

49. On his way out, Plaintiff left the medication for the resident on a night stand in the room.

50. As Plaintiff was getting the phone and coming back, he saw Nicole Driver, the Executive Director and Brittney Lyons, the Resident Care Coordinator.

51. Ms. Driver and Ms. Lyons were coming down towards the Plaintiff.

52. They went into the resident's room to talk to him because he was constantly yelling and they were responding to the next door resident's complaint.

53. Brittney sighted and grabbed the medication and showed it to the Plaintiff.

54. Plaintiff stated, "yes, I left it there to grab the phone because the resident wanted to talk to his son".

55.  On March 2, 2017 at 3:23 p.m., they called me at home because he was off on that day and they left a text message for him to call Nicole Driver as soon as possible.

56.  Plaintiff called Ms. Driver and she put Bittney Lyons on the line to tell the Plaintiff about the medication error.

57.  Ms. Driver stated to the Plaintiff as follows: "Fred we are suspending you. Don't come to work tomorrow because of the medication error that happened yesterday.

58.  Ms. Driver asked the Plaintiff to come and see them in the office on Friday, March 3, 2017 at 3:00 p.m.

59.  Plaintiff went to see them on March 3, 2016.

60.  Ms. Driver, Ms. Lyons and Lesia Freeman were there.

61.  Ms. Driver said to the Plaintiff that they called me because of medication error.

62.  Plaintiff asked "what medication error?"

63.  Ms. Lyons responded that the Plaintiff left medication in the resident's room yesterday, and Plaintiff did not sign the back of MAR for a PRN medication.

64.  Plaintiff asked her to give him a definition of medication error and she could not.

65.  Plaintiff gave them the definition of medication error and told them that he knew that they have a score to settle and that as far as the MAR is concerned, he demanded to see the evidence. Brittney refused to produce the evidence. And to Plaintiff's surprise, both Nicole Driver and Leisa Freeman were in agreement with Brittney.

66.  Plaintiff said that he was willing to accept any punishment for this error, even though proper protocol was not followed, there was no investigation, there was no written statement from him, and no evidence was tendered at the meeting despite the fact that

he demanded for it on numerous occasions during their meeting.

67. Ms. Driver said "you know you have a final warning".

68. Plaintiff replied "No". He said that you cannot use that because those write-ups are being contested by him at the Illinois Department of Human Rights.

69. She said that she would have to terminate Plaintiff's employment because he had a final written warning.

70. Plaintiff asked "is this your final decision?"

71. She said "yes".

72. Other employees like D'Johnell Williams who were similarly situated with the Plaintiff made medication errors and were not terminated.

73. Based on the foregoing, Plaintiff believes that he was discriminated against because of his national origin, Nigerian, and gender, male, in violation of Title VII of the Civil Rights Act of 1964, as amended. He was retaliated against when he was suspended for three days for filing an honest and truthful report about an incident involving the neglect of a fallen resident by D'Johnell Williams. He was wrongfully suspended when the Defendant stated that it suspended him on the complaint of these two employees that he verbally abused a patient on March 21, 2016. He was also retaliated against when he was terminated for medication error. Other employees had committed the same error and were not terminated.

## COUNT I
## TITLE VII
## NATIONAL ORIGIN DISCRIMINATION

74. The Plaintiff adopts and incorporates by reference the allegations contained in

paragraphs 9-73 of the Complaint

75.     The Plaintiff, FREDERICK AGBETUYI, has been subjected to different treatment on the basis of his national origin, Nigerian.

76.     The claim is brought under Title VII, 42 U.S.C. §2000e et seq.

77.     Plaintiff has been employed as a Licensed Practical Nurse with BROOKDALE from August 2013 to March 3, 2017.

78.     Plaintiff has at all times performed his job duties as a Licensed Practical Nurse in a satisfactory manner.

79.     All of Plaintiff's annual evaluations with the Defendant from August 2013 to March 3, 2017 have been satisfactory.

80.     He was denied the same terms and conditions afforded to his co-worker who was similarly situated as myself including Johnell Williams, Licensed Practical Nurse [US Citizen].

81.     On March 23, 2016, he reported an incident in which a resident fell and D'Johnell Williams refused to attend to her.

82.     Instead, D'Johnell Williams left because she stated that she had to go and pick up her baby and that the report should be made to the Plaintiff. She also stated that the Plaintiff might be just sitting in his car.

83.     Despite his formal complaint to management, D'Johnell Williams was never reprimanded or suspended.

84.     On March 24, 2016, Antoinette Armour and Mary Jane Hora, Brookdale employees filed a complaint against the Plaintiff on the instigation of D'Johnell Williams that he

verbally abused a resident when in fact he did not.

85.   On March 21, 2016, and contrary to their false complaint, the Plaintiff stated to the resident as follows: " you need to be using your wheel chair because if you fall and injure yourself, I will have to send you out."

86.   On March 24, 2016, Tina Mitchell, the Executive Director, stated to the Plaintiff that two employees stated to her that he verbally abused a patient on March 21, 2016.

87.   This complaint as stated by these two employees never happened.

88.   Pursuant to the company's policy, such an abuse, if this incident did occur, it should have been reported immediately.

89.   In this case, Mary Jane and Antoinette waited four (4) days and until after the Plaintiff had reported D'Johnell Williams before deciding to report to Ms. Mitchell to make this false charge against him.

90.   In another incident, Nurse Sandra, LPN, made a mistake when she put a patch on a patient's arm and put the wrong date.

91.   She put in a wrong date of April 15, 2016 instead of April 14, 2016.

92.   The patch was supposed to be changed 72 hours later, and, that is, April 18, 2016 based on the date of April 15, 2016.

93.   On April 21, 2017, Brittney Lyons called the Plaintiff to her office and accused him of medication error regarding the above Fentanyl Patch.

94.   Plaintiff responded to her by asking whether she had spoken with Sandra and carried out any investigation.

95.   She replied that it did not matter and that the Plaintiff should have caught the mistake,

and that this could have gotten him fired.

96.   There was no investigation done on this issue at all.

97.   Plaintiff discovered that Brittney took him off the schedule for Saturday, April 23, 2016;

      Sunday, April 24, 2016 and Monday, April 25, 2016.

98.   She publicized the schedules as open shifts via text on the company's cellphone to all

      nurses who might interested.

99.   Plaintiff called off on April 22, 2016 to due to his illness.

100.  On April 21, 2016, based on Plaintiff's physician's order, Plaintiff called off to the

      appropriate number and got a confirmation from Brittney Lyons. Plaintiff was out for

      two weeks on physician's order.

101.  On April 22, 2017, Tina Mitchell called and texted the Plaintiff about the coverage of

      his shifts.

102.  It was a known fact that the shifts in question had been put out as open shifts for other

      nurses who might be interested.

103.  Plaintiff responded to Ms. Mitchell that the coverage of his shifts should be addressed

      to Brittney and that her calling and texting him amounted to harassment, emotional

      torturing and very depressing to his well being.

104.  Plaintiff advised her that the shifts in question had been put out as open shifts to other

      nurses; that he followed protocol as laid out in the Handbook in calling off, and that his

      physician's certification would be sent to her in due time.

105.  Plaintiff advised her that at that time he was going through episodes of depression,

      anxiety, and constant headaches due to the hostile work environment she created for

him at Brookdale.

106.   Finally, Plaintiff pleaded with her that she and her other associates from Brookdale should stop calling and texting him unless it was an emergency.

107.   On April 28, 2016 Plaintiff had a meeting with Bobbi, the Area Manager, and Alisa, the Human Resources Manager from the corporate office regarding how Brittney was harassing and threatening him and other employees of Brookdale. They both promised to look into it because that was the complaints they had been getting all over the building. Furthermore, they also came to a conclusion that there was no proper investigation carried out in the case of the Fentanyl Patch.

108.   On March 1, 2017 at 4:30 p.m. Plaintiff was in a resident's room to give his medication to him, and the resident insisted that he would not take his medication until he talked to his son. Bryan, a care giver, who was assigned to this resident witnessed the whole situation.

109.   Plaintiff went to the Legacy Unit to search for a portable phone to call the son so that the resident could talk to the son.

110.   On his way out, Plaintiff left the medication for the resident on a night stand in the room.

111.   As Plaintiff was getting the phone and coming back, he saw Nicole Driver, the Executive Director and Brittney Lyons, the Resident Care Coordinator.

112.   Ms. Driver and Ms. Lyons were coming down towards the Plaintiff.

113.   They went into the resident's room to talk to him because he was constantly yelling and they were responding to the next door resident's complaint.

114.   Brittney sighted and grabbed the medication and showed it to the Plaintiff.

115. Plaintiff stated, "yes, I left it there to grab the phone because the resident wanted to talk to his son".

116. On March 2, 2017 at 3:23 p.m., they called me at home because he was off on that day and they left a text message for him to call Nicole Driver as soon as possible.

117. Plaintiff called Ms. Driver and she put Bittney Lyons on the line to tell the Plaintiff about the medication error.

118. Ms. Driver stated to the Plaintiff as follows: "Fred we are suspending you. Don't come to work tomorrow because of the medication error that happened yesterday.

119. Ms. Driver asked the Plaintiff to come and see them in the office on Friday, March 3, 2017 at 3:00 p.m.

120. Plaintiff went to see them on March 3, 2016.

121. Ms. Driver, Ms. Lyons and Lesia Freeman were there.

122. Ms. Driver said to the Plaintiff that they called me because of medication error.

123. Plaintiff asked "what medication error?"

124. Ms. Lyons responded that the Plaintiff left medication in the resident's room yesterday, and Plaintiff did not sign the back of MAR for a PRN medication.

125. Plaintiff asked her to give him a definition of medication error and she could not.

126. Plaintiff gave them the definition of medication error and told them that he knew that they have a score to settle and that as far as the MAR is concerned, he demanded to see the evidence. Brittney refused to produce the evidence. And to Plaintiff's surprise, both Nicole Driver and Leisa Freeman were in agreement with Brittney.

127. Plaintiff said that he was willing to accept any punishment for this error, even though

proper protocol was not followed, there was no investigation, there was no written statement from him, and no evidence was tendered at the meeting despite the fact that he demanded for it on numerous occasions during their meeting.

128. Ms. Driver said "you know you have a final warning".

129 Plaintiff replied "No". He said that you cannot use that because those write-ups are being contested by him at the Illinois Department of Human Rights.

130. She said that she would have to terminate Plaintiff's employment because he had a final written warning.

131. Plaintiff asked "is this your final decision?"

132. She said "yes".

133. Other employees like D'Johnell Williams who were similarly situated with the Plaintiff made medication errors and were not terminated.

134. Based on the foregoing, Plaintiff believes that he was discriminated against because of his national origin, Nigerian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

135. All of the foregoing discriminatory conduct occurred and were suffered by the Plaintiff solely because of his national origin, Nigerian.

WHEREFORE, for the foregoing reasons, the Plaintiff, FREDERICK AGBETUYI, respectfully requests that this court provide the following equitable and monetary relief:

a.      Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.      Order a permanent injunction prohibiting the Defendant, BROOKDALE, from

further acts of discrimination and harassment;

     c.    Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

     d.    Award the costs of litigation including reasonable attorneys' fees and opinion witness fees and expenses;

     e.    Award judgment for compensatory damages;

     f.    Award punitive damages;

     g.    Enter an order requiring the Defendant to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

     h.    Grant such other relief as the Court deems equitable and just.

## COUNT II
## TITLE VII
## GENDER DISCRIMINATION

136.    The Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 9-73 and 74-135 of the Complaint

137.    The Plaintiff, FREDERICK AGBETUYI, has been subjected to different treatment on the basis of his gender, male.

138.    The claim is brought under Title VII, 42 U.S.C. §2000e et seq.

139.    Plaintiff was discriminated against because of my gender, male, in violation of Title VII of the Civil Rights Act of 1964, as amended

140.    Plaintiff has been employed as a Licensed Practical Nurse with BROOKDALE from August 2013 to March 3, 2017.

141.    Plaintiff has at all times performed his job duties as a Licensed Practical Nurse in a

satisfactory manner.

142. All of Plaintiff's annual evaluations with the Defendant from August 2013 to March 3, 2017 have been satisfactory.

143. He was denied the same terms and conditions afforded to his co-worker who was similarly situated as himself including D'Johnell Williams, Licensed Practical Nurse [a female].

144. Plaintiff was the only male Licensed Practical Nurse in the building at Brookdale Senior Living.

145. On March 23, 2016, he reported an incident in which a resident fell and D'Johnell Williams refused to attend to her.

146. Instead, D'Johnell Williams left because she stated that she had to go and pick up her baby and that the report should be made to the Plaintiff. She also stated that the Plaintiff might be just sitting in his car.

147. Despite his formal complaint to management, D'Johnell Williams was never reprimanded or suspended.

148. On March 24, 2016, Antoinette Armour and Mary Jane Hora, Brookdale employees filed a complaint against the Plaintiff on the instigation of D'Johnell Williams that he verbally abused a resident when in fact he did not.

149. On March 21, 2016, and contrary to their false complaint, the Plaintiff stated to the resident as follows: " you need to be using your wheel chair because if you fall and injure yourself, I will have to send you out."

150. On March 24, 2016, Tina Mitchell, the Executive Director, stated to the Plaintiff that two

employees stated to her that he verbally abused a patient on March 21, 2016.

151. This complaint as stated by these two employees never happened.

152. Pursuant to the company's policy, such an abuse, if this incident did occur, it should have been reported immediately.

153. In this case, Mary Jane and Antoinette waited four (4) days and until after the Plaintiff had reported Johnell Williams before deciding to report to Ms. Mitchell to make this false charge against him.

154. In another incident, Nurse Sandra, LPN, made a mistake when she put a patch on a patient's arm and put the wrong date.

155. She put in a wrong date of April 15, 2016 instead of April 14, 2016.

156. The patch was supposed to be changed 72 hours later, and, that is, April 18, 2016 based on the date of April 15, 2016.

157. On April 21, 2017, Brittney Lyons called the Plaintiff to her office and accused him of medication error regarding the above Fentanyl Patch.

158. Plaintiff responded to her by asking whether she had spoken with Sandra and carried out any investigation.

159. She replied that it did not matter and that the Plaintiff should have caught the mistake, and that this could have gotten him fired.

159. There was no investigation done on this issue at all.

160. Plaintiff discovered that Brittney took him off the schedule for Saturday, April 23, 2016; Sunday, April 24, 2016 and Monday, April 25, 2016.

161. She publicized the schedules as open shifts via text on the company's cellphone to all

nurses who might interested.

162.    Plaintiff called off on April 22, 2016 to due to his illness.

163.    On April 21, 2016, based on Plaintiff's physician's order, Plaintiff called off to the

appropriate number and got a confirmation from Brittney Lyons.  Plaintiff was out for

two weeks on physician's order.

164.    On April 22, 2017, Tina Mitchell called and texted the Plaintiff about the coverage of

his shifts.

165.    It was a known fact that the shifts in question had been put out as open shifts for other

nurses who might be interested.

166.    Plaintiff responded to Ms. Mitchell that the coverage of his shifts should be addressed

to Brittney and that her calling and texting him amounted to harassment, emotional

torturing and very depressing to his well being.

167.    Plaintiff advised her that the shifts in question had been put out as open shifts to other

nurses; that he followed protocol as laid out in the Handbook in calling off, and that his

physician's certification would be sent to her in due time.

168.    Plaintiff advised her that at that time he was going through episodes of depression,

anxiety, and constant headaches due to the hostile work environment she created for

him at Brookdale.

169.    Finally, Plaintiff pleaded with her that she and her other associates from Brookdale

should stop calling and texting him unless it was an emergency.

170.    On April 28, 2016 Plaintiff had a meeting with Bobbi, the Area Manager, and Alisa, the

Human Resources Manager from the corporate office regarding how Brittney was

harassing and threatening him and other employees of Brookdale. They both promised to look into it because that was the complaints they had been getting all over the building. Furthermore, they also came to a conclusion that there was no proper investigation carried out in the case of the Fentanyl Patch.

171. On March 1, 2017 at 4:30 p.m. Plaintiff was in a resident's room to give his medication to him, and the resident insisted that he would not take his medication until he talked to his son. Bryan, a care giver, who was assigned to this resident witnessed the whole situation.

172. Plaintiff went to the Legacy Unit to search for a portable phone to call the son so that the resident could talk to the son.

173. On his way out, Plaintiff left the medication for the resident on a night stand in the room.

174. As Plaintiff was getting the phone and coming back, he saw Nicole Driver, the Executive Director and Brittney Lyons, the Resident Care Coordinator.

175. Ms. Driver and Ms. Lyons were coming down towards the Plaintiff.

176. They went into the resident's room to talk to him because he was constantly yelling and they were responding to the next door resident's complaint.

177. Brittney sighted and grabbed the medication and showed it to the Plaintiff.

178. Plaintiff stated, "yes, I left it there to grab the phone because the resident wanted to talk to his son".

179. On March 2, 2017 at 3:23 p.m., they called me at home because he was off on that day and they left a text message for him to call Nicole Driver as soon as possible.

180. Plaintiff called Ms. Driver and she put Bittney Lyons on the line to tell the Plaintiff about

the medication error.

181. Ms. Driver stated to the Plaintiff as follows: "Fred we are suspending you. Don't come to work tomorrow because of the medication error that happened yesterday.

182. Ms. Driver asked the Plaintiff to come and see them in the office on Friday, March 3, 2017 at 3:00 p.m.

183. Plaintiff went to see them on March 3, 2016.

184. Ms. Driver, Ms. Lyons and Lesia Freeman were there.

185. Ms. Driver said to the Plaintiff that they called me because of medication error.

186. Plaintiff asked "what medication error?"

187. Ms. Lyons responded that the Plaintiff left medication in the resident's room yesterday, and Plaintiff did not sign the back of MAR for a PRN medication.

188. Plaintiff asked her to give him a definition of medication error and she could not.

189. Plaintiff gave them the definition of medication error and told them that he knew that they have a score to settle and that as far as the MAR is concerned, he demanded to see the evidence. Brittney refused to produce the evidence. And to Plaintiff's surprise, both Nicole Driver and Leisa Freeman were in agreement with Brittney.

190. Plaintiff said that he was willing to accept any punishment for this error, even though proper protocol was not followed, there was no investigation, there was no written statement from him, and no evidence was tendered at the meeting despite the fact that he demanded for it on numerous occasions during their meeting.

191. Ms. Driver said "you know you have a final warning".

192. Plaintiff replied "No". He said that you cannot use that because those write-ups are

being contested by him at the Illinois Department of Human Rights.

193. She said that she would have to terminate Plaintiff's employment because he had a final written warning.

194. Plaintiff asked "is this your final decision?"

195. She said "yes".

196. Other employees like D'Johnell Williams who were similarly situated with the Plaintiff made medication errors and were not terminated.

197. Based on the foregoing, Plaintiff believes that he was discriminated against because of his gender, male.

WHEREFORE, for the foregoing reasons, the Plaintiff, FREDERICK AGBETUYI, respectfully requests that this court provide the following equitable and monetary relief:

a. Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b. Order a permanent injunction prohibiting the Defendant, BROOKDALE from further acts of discrimination and harassment;

c. Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

d. Award the costs of litigation including reasonable attorneys' fees and expert witness fees and expenses;

e. Award judgment for compensatory damages;

f. Award punitive damages;

g. Enter an order requiring the Defendant to implement effective steps to eliminate

and remediate race discrimination from the Defendant's organization;

    h.     Grant such other relief as the Court deems equitable and just.

## COUNT III
## RETALIATION

198.     The Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 9-73, 74-135 and 136-197 of the Complaint.

199.     The Plaintiff, FREDERICK AGBETUYI, was retaliated against by the Defendant when he was suspended for three days for filing an honest and truthful report about an incident involving the neglect of a fallen resident by Johnell Williams. He was wrongfully suspended when the Respondent stated that it suspended him on the complaint of these two employees that he verbally abused a patient on March 21, 2016. The alleged verbal abuse of a patient never happened. Plaintiff was also retaliated against when he was accused of the error that Sandra made, terminated for medication error and for filing a Charge of Discrimination with the Illinois Department of Human Rights on April 22, 2016.

200.     The claim is brought under Title VII, 42 U.S.C. §2000e et seq.

201.     Plaintiff's race is black and his national origin is Nigeria.

202.     Plaintiff has at all times performed his job duties as a Licensed Practical Nurse in a satisfactory manner.

203.     All of Plaintiff's annual evaluations with the Defendant from August 2013 to March 3, 2017 have been satisfactory.

204.     On March 23, 2016, Plaintiff reported an incident in which a resident fell and Johnell

Williams refused to attend to her.

205. Instead, D'Johnell Williams left because she stated that she had to go and pick up her baby and that the report should be made to the Plaintiff. She also stated that the Plaintiff might be just sitting in his car.

206. Despite his formal complaint to management, D'Johnell Williams was never reprimanded or suspended.

207. On March 24, 2016, Antoinette Armour and Mary Jane Hora, Brookdale employees filed a complaint against the Plaintiff on the instigation of D'Johnell Williams that he verbally abused a resident when in fact he did not.

208. On March 21, 2016, and contrary to their false complaint, the Plaintiff stated to the resident as follows: " you need to be using your wheel chair because if you fall and injure yourself, I will have to send you out."

209. On March 24, 2016, Tina Mitchell, the Executive Director, stated to the Plaintiff that two employees stated to her that he verbally abused a patient on March 21, 2016.

210. This complaint as stated by these two employees never happened.

211. Pursuant to the company's policy, such an abuse, if this incident did occur, it should have been reported immediately.

212. In this case, May Jane and Antoinette waited four (4) days and until after the Plaintiff had reported Johnell Williams before deciding to report to Ms. Mitchell to make this false charge against him.

213. On April 22, 2016, Plaintiff filed a charge of Discrimination against the Defendant at the Illinois Department of Human Rights.

214.  As a result of this pending Charge, the Defendant retaliated by falsely accusing the Plaintiff of the error that Sandra made and terminating me because of medication error.

215.  Had the Charge of Discrimination not been filed by the Plaintiff, the Defendant would not have terminated him.

216.  Based on the foregoing, Plaintiff believes that he had been retaliated against when he was suspended for three days for filing an honest and truthful report about an incident involving the neglect of a fallen resident by D'Johnell Williams. He was wrongfully suspended when the Respondent stated that it suspended him on the complaint of these two employees that he verbally abused a patient on March 21, 2016. The alleged verbal abuse of a patient never happened. Plaintiff had also been retaliated against due to the Charge of Discrimination that he filed with the Illinois Department of Human Rights on April 22, 2016.

WHEREFORE, for the foregoing reasons, the Plaintiff, FREDERICK AGBETUYI, respectfully requests that this court provide the following equitable and monetary relief:

a.  Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.  Order a permanent injunction prohibiting the Defendant, BROOKDALE, from further acts of discrimination and harassment;

c.  Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

d.  Award the costs of litigation including reasonable attorneys' fees and expert

witness fees and expenses;

      e.     Award judgment for compensatory damages;

      f.     Award punitive damages;

      g.     Enter an order requiring the Defendant to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

      h.     Grant such other relief as the Court deems equitable and just.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

217.   The Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 9-73, 74-135, 136-197 and 198-216 of the Complaint.

218.   The Defendant's conduct and the conduct of its manager and supervisor as outlined in the foregoing paragraphs were extreme, outrageous and beyond the bounds of moral decency and intended to cause extreme distress which Plaintiff, FREDERICK AGBETUYI, suffered and continues to suffer since the incidents alleged herein, a psychological condition for which he is receiving medical treatment.

219.   The Defendant's conduct and the conduct of its manager and supervisor were so extreme and outrageous, subjected Plaintiff to severe mental distress and suffering and no reasonable person could be expected to endure it.

220.   By reason thereof, Plaintiff was injured by the acts of Defendant and the conduct of its manager and supervisor, including but not limited to emotional injuries, great distress of body and mind, pain and suffering, post-traumatic stress syndrome, costs of treating such injuries, and other consequential damages.

WHEREFORE, for the foregoing reasons, the Plaintiff, FREDERICK AGBETUYI, respectfully requests that this court provide the following equitable and monetary relief:

a.　Advance this case on the docket, order a speedy hearing at the earliest practical book date and cause this case to be expedited in every possible way;

b.　Order a permanent injunction prohibiting the Defendant, BROOKDALE from further acts of discrimination and harassment;

c.　Award back pay, future earnings and reimbursement for income and fringe benefits to the present with applicable statutory interest;

d.　Award the costs of litigation including reasonable attorneys' fees and expert witness fees and expenses;

e.　Award judgment for compensatory damages;

f.　Award punitive damages;

g.　Enter an order requiring the Defendant to implement effective steps to eliminate and remediate race discrimination from the Defendant's organization;

h.　Grant such other relief as the Court deems equitable and just.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action.

Respectfully submitted,

**FREDERICK AGBETUYI**

By:＿＿＿ /s/ Paul O. Otubusin ＿＿＿＿＿
　　　　　One of His Attorneys

Dated: January 22, 2018

Paul O. Otubusin, Esq.
ARDC No: 6205261
OTUBUSIN & ASSOCIATES, P.C.
77 West Washington Street
Suite 1204
Chicago, Illinois 60602
E-mail: drotubusin@otubusinlaw.com
(312) 251-1480
(312) 251-1481 (Fax)